**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald David ELLYSON,
Defendant–Appellant.**

**No. 00–4600.**

United States Court of Appeals,
Fourth Circuit.

Argued: Oct. 30, 2002.

Decided: March 17, 2003.

12. As we described above, we do not interpret the Consent Order as precluding a trial on the *Gwaltney* issue.

**ARGUED:** Stephen Clayton Gordon, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Dennis M. Duffy, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. John Stuart Bruce, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Before LUTTIG, MICHAEL, and TRAXLER, Circuit Judges.

Vacated and remanded by published opinion. Judge TRAXLER wrote the opinion, in which Judge LUTTIG and Judge MICHAEL joined.

## OPINION

TRAXLER, Circuit Judge:

Ronald Ellyson was convicted of possessing child pornography in violation of 18 U.S.C.A. § 2252A(a)(5)(B), (b)(2) (West 2000). Ellyson argues that law enforcement officers obtained the illicit pornographic material at issue through a constitutionally defective search of his residence. Ellyson also contends that the district court's jury instructions failed to comply with *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), thereby permitting the jury to convict him on unconstitutional grounds. Because the court's instructions were erroneous under *Free Speech Coalition*, we must set aside the verdict and remand the matter for further proceedings.

## I.

On September 11, 1998, officers from the Boiling Springs Lake Police Department in North Carolina received information that two larceny suspects were guests at a trailer owned by Ellyson. Officers knocked and then entered the trailer in hopes of arresting Nathan Rudolphsky, one of the suspects. According to Chief White, he asked Ellyson if the police could search the trailer for Rudolphsky and Ellyson agreed. Police found Rudolphsky asleep in a back bedroom with Angela Burr, a woman who was living in Ellyson's trailer at the time.

During the time that officers were in the trailer, they observed a marijuana bong in plain view in the living room. When asked if the trailer contained any drugs or more drug paraphernalia, Ellyson responded that it did not. According to the officers,

Ellyson did not object to a search of the trailer for additional illegal drugs or items associated with such drugs. During a search of Ellyson's bedroom, officers located a binder notebook containing images of children engaged in sexual activity. Ellyson was arrested for possessing child pornography. At the request of police, Ellyson then directed officers to a closet where he kept a second notebook containing similar images. Officers also seized Ellyson's computer, as well as various videotapes, magazines, photographs, letters, and newspaper clippings belonging to Ellyson.

After Ellyson's arrest, Angela Burr continued to live in the trailer. For nearly two weeks after the September 11 search, Burr remained in contact with officers from the Boiling Springs Lake Police Department. Burr testified that various officers told her that if law enforcement officers searched the trailer again and "there was anything [illegal] found in the house ... [she] would possibly [be charged with] aiding and ab[etting]," J.A. 116, and if she "came across [anything illegal] that it would be" in her best "interest to turn it in or else [she] could be liable for it." J.A. 176.

On September 18, 1998, Burr visited Ellyson in jail. According to Burr, the purpose for her visit was to ask permission to continue living in the trailer while Ellyson was incarcerated. During their conversation, Ellyson inquired whether police officers had returned to conduct another search. When Burr responded that they had not done so, Ellyson told her that he had some computer diskettes that he wanted Burr to dispose of as soon as she returned to the trailer. Burr testified that she visited Ellyson of her own accord and that she was never asked to meet Ellyson or elicit any information from him on behalf of the police. The following day, Burr

located a box containing several diskettes, letters, and more photographs; she also found a few computer diskettes in a night stand. On September 20, 1998, in light of what she had been told about any such material remaining in the trailer, Burr contacted police and turned over the materials.

Ellyson successfully moved to suppress the items obtained by police in their initial search on September 11. After an extensive evidentiary hearing, the district court granted Ellyson's motion as to the evidence obtained during the initial search. The court concluded that the officers' "opening of the door of Ellyson's trailer constituted a warrantless, nonconsensual entry into the residence" in violation of Ellyson's Fourth Amendment rights; that "[e]xigent circumstances did not justify the illegal entry into the home"; and "that Ellyson's consent to search subsequent to the illegal entry" did not purge "the taint of the original illegality." J.A. 614.

Ellyson also moved to suppress the evidence that Burr subsequently located and then turned over to authorities on September 20. There was evidence in the record before the district court that cast doubt on whether Burr was acting independently when she learned of and recovered the evidence that she eventually gave to police officers and that ultimately led to Ellyson's conviction. The district court, however, rejected Ellyson's argument that Burr was acting as an agent of the government and thus conducted an impermissible search when she located the computer disks and other items that she relinquished to the police. The court made a factual finding "that the police did not participate directly in obtaining the September 20 evidence," J.A. 626, and that "Burr's decision to turn over the items she found was motivated primarily by her desire to protect herself," J.A. 624. Thus, the court concluded that Ellyson failed to carry his burden of showing that Burr was acting as an agent of the government.

The case went to trial based on the evidence Burr gave police on September 20, 1998. This evidence included multiple images of an actual, identifiable minor engaged in explicit sexual conduct; however, there were many other images introduced for which there was no testimony that the minors depicted were actual children. The district court instructed the jury that the government was required to prove that Ellyson "knowingly possessed at least one visual depiction of an image ... he knew to be child pornography." J.A. 1568. In accordance with the Child Pornography Prevention Act of 1996 ("CPPA"), see 18 U.S.C.A. § 2256(8) (West 2000), the district court instructed the jury that "child pornography" was defined as "any visual depiction, including any photograph, film, video, picture, or ... computer-generated image ... of sexually explicit conduct, where the production of such visual depiction involves the use of a minor ... engaging in sexually explicit conduct; or such visual depiction is, *or appears to be,* of a minor engaging in sexually explicit conduct." J.A. 1570 (emphasis added). The court further instructed the jury that the government was required to prove that the images possessed by Ellyson "either had been mailed or shipped or transported in interstate or foreign commerce by any means, including computer." J.A. 1572. The jury returned a guilty verdict. At sentencing, the district court imposed a 78–month term of imprisonment, departing upward on the basis that Ellyson's criminal history category did not adequately reflect the likelihood that Ellyson would continue to commit crimes involving sexually deviant conduct with minors.

Ellyson filed this appeal, arguing that the district court erroneously concluded

that law enforcement agents were not acting through Burr to conduct a search for additional evidence of child pornography and that the items turned over to police on September 20 should have been suppressed. Initially, Ellyson contended that the government failed to establish an interstate commerce nexus to his possession of the images involving actual minors. Ellyson claimed that his possession of the remaining images, which did not definitively involve the use of actual children, could not be constitutionally prohibited. Although Ellyson acknowledged that his argument was contrary to circuit precedent at the time he filed his appeal, *see United States v. Mento*, 231 F.3d 912 (4th Cir. 2000), *vacated*, 535 U.S. 1014, 122 S.Ct. 1602, 152 L.Ed.2d 617 (2002), he urged us to follow the view of the Ninth Circuit in *Free Speech Coalition v. Reno*, 198 F.3d 1083, 1097 (9th Cir.1999), which the Supreme Court affirmed, that the definition of "child pornography" under § 2256(8)(B) was unconstitutional to the extent that it proscribed possession of an image that "appears to be[ ] of a minor engaging in sexually explicit conduct." 18 U.S.C.A. § 2256(8)(B). Because the Supreme Court had already granted certiorari to address this issue, we held this appeal in abeyance pending the Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

## II.

First, we consider Ellyson's argument that the district court was in error when it concluded that no agency relationship existed between Burr and the government for Fourth Amendment purposes and denied his motion to suppress the evidence given to police by Burr. We review the factual findings underlying the district court's denial of a pretrial motion to suppress for clear error, and the court's legal determinations de novo. *See Ornelas v.* *United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir.1998). We review the evidence in the light most favorable to the government. *See Seidman*, 156 F.3d at 547.

Because the protection afforded by the Fourth Amendment is aimed "exclusively at state action ... evidence secured by private searches, even if illegal, need not be excluded from a criminal trial." *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir.1992). The Fourth Amendment applies to a search conducted by a private citizen only if that individual is "acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (internal quotation marks omitted); *see Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (explaining that a private search may be converted into state action only if the private actor is "regarded as having acted as an 'instrument' or agent of the state"). The burden of proving that a private party acted as an agent or instrument of the government is on the defendant. *See United States v. Shahid*, 117 F.3d 322, 325 (7th Cir.1997). Whether an agency relationship exists is a fact-intensive inquiry that is guided by common law agency principles. *See United States v. Koenig*, 856 F.2d 843, 847 n. 1 (7th Cir.1988). One highly pertinent consideration is "whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose for conducting the search was to assist law enforcement efforts or to further her own ends." *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir.1987); *see Kinney*, 953 F.2d at 865 (affirming the district court's conclusion that no agency relationship existed where the private individual

"acted on her own initiative, without suggestion from the police officers").

■ The district court made several critical factual findings on this issue. The court found that Burr visited Ellyson in jail on September 18 "because she wanted to discuss with Ellyson whether she could continue to reside in his trailer," that Ellyson "requested Burr to locate and dispose of some computer disks that remained in the trailer," and that "Burr made no effort to look for evidence in the trailer until after her meeting with Ellyson." J.A. 616. The district court further found that "Burr's actions were not motivated by a desire to aid the police in building their case" but by a desire to preclude "law enforcement from holding her responsible for any items subsequently discovered in the trailer." J.A. 617. Thus, the district court found that Burr had a "legitimate independent motivation" for performing the search. J.A. 624. The court also found, based on the testimony of Burr and various officers, that the police never asked Burr to visit Ellyson in jail, that they were not "aware that Ellyson had requested Burr to dispose of the disks," and that they did not prompt Burr to search further after she had turned over the evidence on September 20. J.A. 623. Based on these findings of fact—that Burr had a "legitimate independent motivation" for performing the search and the police had not participated or acquiesced in the search—the district court concluded that

Burr had not been acting as an agent or instrument of the state.

Ellyson concedes that the district court's findings of fact are not clearly erroneous, and, having reviewed the record, we perceive no clear error in any event. Ellyson argues simply that the district court drew the wrong legal conclusion from its findings. Ellyson suggests that the evidence in the record compels the conclusion that Burr was an instrument of the police, and he points out that the district court even acknowledged that the record contained "several pieces of evidence" supporting his agency theory. J.A. 620.[1] However, once it has been established that the court did not clearly err in its findings that the police neither directed nor acquiesced in Burr's independently-motivated activities, our inquiry is at an end even though the evidence might have allowed a different conclusion. *See Feffer*, 831 F.2d at 739 (agency relationship turns on the government's knowledge and the private actor's motivation). For Ellyson to argue that the record contains substantial *conflicting* evidence that would have supported the finding that Burr was not acting independently is simply another way of suggesting the district court reached the wrong *factual* conclusion. As Ellyson himself observed, the district court acknowledged that there was conflicting evidence but simply decided to credit the testimony of Burr and the police officers on this issue. Accordingly, we reject this argument and affirm the

---

1. For example, there was evidence that, at or near the time that Burr turned over the evidence, Police Chief White met with Burr and drafted (or assisted the drafting of) a purported lease agreement governing Burr's rights with respect to the trailer. There was evidence that, following Ellyson's arrest, Burr was issued a "citation" for felonious harboring of a fugitive and then was told, at or around the time that she turned over the evidence, that the charges were dismissed because they had been irregularly issued. And, there was evidence that Burr filed a complaint with the North Carolina State Bureau of Investigation alleging that the Chief White during this time induced Burr to exchange sexual favors for money with a friend of Chief White. Burr acknowledged these allegations at the suppression hearing, but denied the alleged conduct had any bearing on her decision to gather and turn over the disks.

denial of Ellyson's motion to suppress this evidence.

## III.

### A.

Next, Ellyson contends that, in light of *Free Speech Coalition,* the district court's jury instructions permitted the jury to convict him on constitutionally infirm grounds, requiring the verdict to be set aside. Ellyson was convicted of knowingly possessing computer disks that contained "image[s] of child pornography." 18 U.S.C.A. § 2252A(a)(5)(B). Before Congress passed the CPPA, the definition of "child pornography" applied to visual depictions of actual minors "engaging in sexually explicit conduct." 18 U.S.C.A. § 2256(8)(A); *see Free Speech Coalition,* 122 S.Ct. at 1397. The CPPA expanded the definition of "child pornography" to include a "visual depiction [that] is, or appears to be, of a minor engaging in sexually explicit conduct," 18 U.S.C.A. § 2256(8)(B), or a "visual depiction [that] is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct," 18 U.S.C.A. § 2256(8)(D). Accordingly, the expanded definition of child pornography encompassed images that did not involve *actual* minors in the production, including "'virtual child pornography'"—images that were completely computer-generated. *Free Speech Coalition,* 122 S.Ct. at 1397.[2]

In concluding that the CPPA's prohibition against the possession of virtual child pornography was overly broad under the First Amendment, the Court focused on two obscenity/pornography decisions. In *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Court instructed that the First Amendment prohibits government regulation of sexually oriented material unless it is obscene, which the Court defined as material that, "taken as a whole, appeal[s] to the prurient interest in sex, ... portray[s] sexual conduct in a patently offensive way, and ... do[es] not have serious literary, artistic, political, or scientific value." The CPPA's ban on virtual child pornography, however, "extends to images that appear to depict a minor engaging in sexually explicit activity without regard to the *Miller* requirements." *Free Speech Coalition,* 122 S.Ct. at 1399. Although *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), allows the prohibition of child pornography that is not necessarily obscene under *Miller,* the Court explained that *Ferber*'s holding was based "on the production of the work, not its content." *Free Speech Coalition,* 122 S.Ct. at 1401. *Ferber* permits a state to ban the sale or distribution of child pornography that is "'intrinsically related' to the sexual abuse of children" in that such material is "a permanent record of a child's abuse, [and] the continued circulation itself would harm the child." *Id.* The Court in *Free Speech Coalition* concluded that "[i]n contrast to the speech in *Ferber,* speech that itself is the record of sexual abuse," the CPPA's ban of material that "appears to

---

**2.** Under § 2256(8)(C), the definition of child pornography also includes images produced by "morphing," a "lower tech means of creating virtual images" whereby a "pornographer can alter innocent pictures of real children so that the children appear to be engaged in sexual activity." *Free Speech Coalition,* 122

S.Ct. at 1397. Although not presented with the question of whether such morphed images can be constitutionally banned, the Court noted that, unlike virtual images, morphed images "implicate the interests of real children." *Id.*

be" child pornography "prohibits speech that records no crime and creates no victims by its production." *Id.* at 1402. Because § 2256(8)(B) "covers materials beyond the categories recognized in *Ferber* and *Miller,*" the Court held that the provision is overbroad under the First Amendment. *Id.* at 1405.[3]

The district court in this case instructed the jury that it could find Ellyson guilty of violating § 2252A if it concluded that he had possessed material containing a visual depiction that "appears to be[ ] of a minor engaging in sexually explicit conduct." J.A. 1570. The instruction simply tracked the language of § 2256(8)(B) and therefore amounted to an erroneous instruction to the extent that it permitted the guilty verdict to rest on the unconstitutional "appears to be" language in the statute. *See United States v. Richardson,* 304 F.3d 1061, 1063 (11th Cir.2002) (finding jury instructions plainly erroneous because the district court included "appears to be" language in the definition of child pornography so that the government did not have to prove that the images were of *"actual* children, as opposed to 'virtual' children"), *cert. denied,* — U.S. ——, 123 S.Ct. 930, 154 L.Ed.2d 832 (2003). Of course, the district court did not have the benefit of *Free Speech Coalition* at the time it issued its instructions to the jury. Indeed, at the time of trial, the court's instructions were consistent with circuit precedent rejecting a constitutional challenge to the "appears to be" language of the CPPA. *See Mento,* 231 F.3d at 921.

### B.

■ We next consider the appropriate standard of review. We conclude our review is for harmless error. Despite *Mento,* it appears that defense counsel had the prescience to preserve an objection to a guilty verdict based on a visual depiction that did not make use of an actual child. During the charge conference, defense counsel asked the court to remove language that included the phrase "appeared to be" because the government was required to prove that Ellyson was "required to know that they are minors." J.A. 1516. Although this particular objection may have been inexact, we think it sufficiently reflects the legal theory underlying Ellyson's earlier Rule 29 motion for acquittal. In arguing for a judgment of acquittal, Ellyson contended that the "prosecution did not prove by any credible evidence . . . that there were victims under the age of 18." J.A. 1332. When the government responded that it was only required to prove the images involved "someone who looks like a minor," J.A. 1335, Ellyson clarified that he was "not talking about age . . . [but] actual people." J.A. 1336. Ellyson contended that, according to the government's own witnesses, "images can be entirely generated without the use of individuals in any way, shape or form," and that "there is no evidence . . . that [a large number of] the images are not entirely made up and do not fall within the statute," J.A. 1332, because "it has to be an actual [minor]." J.A. 1336. In view of the record as a whole, we conclude that Ellyson's attorney preserved the record on this issue. Accordingly, our review is for

---

**3.** For the same reasons, *Free Speech Coalition* also struck down § 2256(8)(D), which prohibits the possession of images that are "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexu-

ally explicit conduct." *See* 122 S.Ct. at 1405–06. Although the district court included this language in his jury charge, the government has never contended that § 2256(8)(D) applied to Ellyson, and it is not an issue on appeal.

harmless error rather than plain error. *See* Fed.R.Crim.P. 52(a).

### C.

▮▮▮▮ Under *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), "a verdict [must] be set aside in cases where [it] is [legally] supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *See Griffin v. United States,* 502 U.S. 46, 52, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). "[R]eversal is required when a case is submitted to a jury on two or more alternate theories, one of which is legally (as opposed to factually) inadequate, the jury returns a general verdict, and it is impossible to discern the basis on which the jury actually rested its verdict." *United States v. Hastings,* 134 F.3d 235, 242 (4th Cir.1998). The district court's instructions permitted the jury to convict Ellyson on essentially alternate grounds— that Ellyson possessed images involving the use of an *actual* minor engaged in explicit sexual conduct or that Ellyson possessed images involving what "appears to be ... a minor engaging in sexually explicit conduct." J.A. 1570. Therefore, the jury was presented with one alternative that was constitutionally viable and one that was not. Because the jury rendered a general guilty verdict that did not specify the basis for the conviction, the question becomes whether it is possible for us to determine such basis.

It is undisputed that several of the images involved the use of an actual, identifiable minor named "Mike" from the Raleigh, North Carolina area. The jury's conviction of Ellyson for his possession of these particular images would not offend the First Amendment under *Free Speech Coalition.* There are other images contained on Ellyson's diskettes, however, with respect to which the government failed, at least on the record before us, to establish the use of an actual child victim. Agent Michael Darnell, who had experience in the investigation of cases involving internet child pornography and was specially trained to extract such images from a defendant's computer, testified that it is "possible to completely construct an image of a young boy ... not having utilized a young boy in the construction of that image." J.A. 1321.[4] Agent Darnell indicated that diskette number 20, for example, contained 57 images of child pornography, but that he did not know whether these particular images involved the use of actual children or whether the images were virtual creations. Had the jury found Ellyson guilty based on these images because they "appeared to be" a depiction of child pornography, the verdict could not stand under *Free Speech Coalition.* In sum, the evidence in the record, coupled with the court's instructions, permitted the jury to convict Ellyson on both a constitutional and unconstitutional basis. Because there is no way for us to determine the jury's basis for its verdict, we must set the verdict aside. *Cf. Richardson,* 304 F.3d at 1064 (finding jury instructions plainly erroneous but concluding that the error did not affect the "fairness, integrity of public reputation" of the judicial process where "the evidence clearly established that the children depicted in the images or pictures were actual children").

### D.

▮▮▮ This conclusion does not end the matter because we must determine whether the government may retry Ellison or

---

**4.** Although Agent Darnell used the term "morphing" to describe this process, it is clear from his comments as a whole that he was describing what the Supreme Court called "virtual" pornography. *See Free Speech Coalition,* 122 S.Ct. at 1397.

whether he is entitled to an outright reversal and judgment of acquittal. Ellyson contends that he is entitled to a judgment of acquittal because only images involving the use of an actual child are sufficient to support a conviction, and that the government failed to introduce evidence establishing an interstate nexus with those relatively few images introduced that depicted an actual child. Ellyson concedes that the images of "Mike"—approximately 12 of them—were images of an actual child; however, he contends that the government failed to meet its burden of establishing that the images of Mike were "mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C.A. § 2252A(a)(5)(B).

■■■ When an appellate court vacates a conviction based on an error in the trial proceedings, the government is generally free to retry the defendant. *See Lockhart v. Nelson*, 488 U.S. 33, 38–39, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). Well-established Supreme Court jurisprudence on this subject teaches that "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside . . . because of some error in the proceedings leading to conviction." *Id.* at 38, 109 S.Ct. 285. However, there is an exception to this rule "when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict." *Id.* at 39, 109 S.Ct. 285; *see Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). "A reversal based on the legal insufficiency of evidence is, in effect, a determination that

the government's case was so lacking that the trial court should have entered a judgment of acquittal rather than submitting the case to the jury." *United States v. Akpi*, 26 F.3d 24, 25 (4th Cir.1994). The Double Jeopardy Clause does not permit "the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks*, 437 U.S. at 11, 98 S.Ct. 2141; *see Gilliam v. Foster*, 61 F.3d 1070, 1085 (4th Cir.1995) (en banc) (Niemeyer, J., dissenting) ("The Court has stated that the protection against affording the prosecution a second opportunity to supply evidence which it failed to present initially" falls within the heart of double jeopardy protection). By contrast, a conviction set aside based on trial error "does not constitute a decision to the effect that the government has failed to prove its case . . . [and] it implies nothing with respect to the guilt or innocence of the defendant." *Burks*, 437 U.S. at 15, 98 S.Ct. 2141.

Although Ellyson's claim focuses on what he believes is insufficient evidence of an interstate nexus to the images of "Mike," the basis for setting aside Ellyson's conviction is not an insufficiency of evidence; rather, we must set aside the verdict because of the erroneous jury instruction. Under circuit law at the time of trial, the government presented more than sufficient evidence to support a guilty verdict against Ellyson. Prior to *Free Speech Coalition*, the government could satisfy its burden by showing that Ellyson's child pornography "appear[ed] to be of a minor" under § 2256(8)(B), and it was unnecessary for the government to offer evidence that a minor depicted in a given image was an actual child and not a computer-generated image. *See Mento*, 231 F.3d at 921–22.

The record contains substantial evidence that the images possessed by Ellyson (apart from the ones involving "Mike"), at

the very least, "appeared to be of ... minors" involved in sexually explicit conduct, *see* 18 U.S.C.A. § 2256(8)(B), and that such images had moved in interstate commerce, *see* 18 U.S.C.A. § 2252A(a)(5)(B). As established through the testimony of several witnesses, Ellyson's diskettes contained numerous images depicting minor boys, teenage and younger, engaged in sexual activity. These images were originally stored on the diskettes by James Manchester, an inmate Ellyson befriended while Ellyson was serving time for violating the terms of his supervised release imposed in connection with an unrelated child pornography offense. Manchester testified that he downloaded images of child pornography from various internet websites onto the diskettes and ultimately gave the diskettes to Ellyson because of Ellyson's shared interest in child pornography. Agent Darnell, who examined each image contained on the diskettes, testified that the images depicted "young boys engaged in different sexual acts." J.A. 1311. Because the actual images have not been included in the joint appendix, we have not reviewed them. However, Ellyson does not dispute that a substantial number of these images *appear to* depict minors engaged in sexually explicit conduct and, therefore, at the very least, fell within the definition of child pornography under § 2256(8)(B) prior to *Free Speech Coalition.*

There was also substantial evidence to satisfy the interstate commerce component of § 2252A(a)(5)(B) with respect to a number of the images Manchester downloaded from the Internet and stored on the diskettes discovered in Ellyson's possession. Superimposed over some of these images were internet addresses for European child pornography websites or other indications that the image originated from a particular website, such as a logo. For example, exhibit 204, which Agent Darnell

described as "pictures of young males engaged in various sexual activit[ies]," bore a "Pink Panther" logo that Agent Darnell identified as an European internet website "visited by people looking for child pornography." J.A. 1324–25. A graphic reference to a European child pornography website, where it is superimposed over the visual depiction itself and the nature of the website is verified through the testimony of an agent with relevant experience, is sufficient evidence, albeit circumstantial, to establish an interstate nexus under § 2252A(a)(5)(B). *See United States v. Runyan,* 290 F.3d 223, 242 (5th Cir.) (acknowledging that "the presence of a website address embedded on the image" may constitute "sufficient evidence of interstate transportation to support a conviction under § 2252A"), *cert. denied,* —— U.S. ——, 123 S.Ct. 137, 154 L.Ed.2d 149 (2002); *United States v. Hilton,* 257 F.3d 50, 54–55 (1st Cir.2001) ("[P]roof of transmission of pornography over the Internet ... satisfies the interstate commerce element of the offense," which the government supplied through testimony from a computer forensics agent that images had "likely" been downloaded from the Internet because the storage disk "contained software used in conjunction with Internet chat rooms.").

Thus, the double jeopardy concerns that preclude the government from having a second opportunity to build a case against a defendant when it failed to do so the first time are not present here. Any insufficiency in proof was caused by the subsequent change in the law under *Free Speech Coalition,* not the government's failure to muster evidence. In *Lockhart,* the Court addressed a somewhat analogous situation in which the defendant argued that retrial was impermissible because once his conviction had been set aside on appeal based on erroneously admitted evidence, the remaining (properly admitted) evidence was insufficient to sustain a conviction. *See*

488 U.S. at 34, 109 S.Ct. 285. The Court concluded that retrial was permitted "where the evidence offered by the State and admitted by the trial court . . . would have been sufficient to sustain a guilty verdict." *Id.* The Court explained that, had the evidence been properly excluded at trial, the government would have had an opportunity to offer other evidence to satisfy its burden. *See id.* at 42, 109 S.Ct. 285. Similar reasoning applies here. The government presented its evidence under the wrong standard, *i.e.*, it presented evidence correctly believing, based on the law at the time, that it was enough to prove the images "appeared" to depict minors. If the evidence in the record is insufficient to support a verdict under *Free Speech Coalition*, it is not because of the government's failure of proof but because of the changes brought by *Free Speech Coalition*.

Moreover, there is, even after *Free Speech Coalition*, sufficient evidence in the record to support a guilty verdict on the basis that Ellyson possessed images involving the use of *actual* minors. At a minimum, sufficient evidence was introduced through testimony surrounding the creation, storage and movement of the images of "Mike," an actual, identifiable child. The images of Mike were created originally by Manchester, who later gave them to Ellyson. Manchester testified that he had created the images of Mike, a 12–year–old boy from Manchester's neighborhood, and eventually that he had been convicted of producing and distributing child pornography as a result of his illicit activities with Mike. Manchester videotaped Mike engaged in graphic sexual activity in the living room of Manchester's home. Manchester, who apparently had been a computer instructor, then "digitized" various still images from the video-

tape of Mike and put these pictures on a computer file. Manchester made these still pictures from the videotape available for others to view or access on the Internet. Manchester indicated that the images of Mike were then *downloaded onto the diskettes from the Internet.* After Manchester stated unequivocally that the images contained on the diskettes had come from the Internet, the prosecutor asked Manchester to explain his answer further and Manchester then expressed some uncertainty as to the sequence of events.

In mounting a challenge to the sufficiency of the evidence, a defendant must overcome a heavy burden in that we view the evidence in the light most favorable to the government, "making all inferences and credibility determinations in its favor." *United States v. Hoyte,* 51 F.3d 1239, 1245 (4th Cir.1995); *see United States v. Romer,* 148 F.3d 359, 364 (4th Cir.1998). The evidence connecting the images of Mike to interstate commerce is thin, and Manchester's equivocation clouded the record somewhat. Nevertheless, read in the light most favorable to the government, Manchester's testimony was sufficient to establish the interstate connection. *See Runyan,* 290 F.3d at 242; *Hilton,* 257 F.3d at 54–55. Manchester testified that, after creating the videotape, he first stored the still images of Mike on his computer and then put them on the Internet. Manchester never disclaimed his initial response that he subsequently pulled the pictures from the Internet onto the diskettes that he gave Ellyson; he just expressed uncertainty.[5]

Finally, retrial is appropriate because not only do the Mike images involve a real child victim, but the other images depicting minors engaged in explicit sexual activ-

---

**5.** Ellyson also contends that we should not consider the images of Mike because they were not introduced as substantive evidence but only to show intent, motive, or lack of mistake. A review of the record, however, reveals that at least two of the three diskettes

ity also may well involve actual children. The government represents that it is clear simply from looking at many of the images on their face that actual children were involved. As we have indicated, this is not apparent from the materials before us, which do not include the images. *See Richardson*, 304 F.3d at 1064 (concluding that disputed images depicted actual children based in part on appellate panel's review of images). But neither is it apparent that the images are computer-generated virtual pornography. In fact, there has been no suggestion whatsoever that such is the case. Accordingly, we are satisfied that retrial is appropriate.

### IV.

We vacate Ellyson's conviction and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

containing the images of Mike were introduced by the government without objection from Ellyson.