PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellant,*

v.                                                    No. 02-4953

WILLIAM ADDERSON JARRETT,
         *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-02-11)

Argued: June 3, 2003

Decided: July 29, 2003

Before WILKINSON and MOTZ, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

---

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Wilkinson and Senior Judge Beezer joined.

---

## COUNSEL

**ARGUED:** Michael James Elston, Assistant United States Attorney,
Alexandria, Virginia, for Appellant. Jeffrey Lee Everhart, RICE,
EVERHART & BABER, Richmond, Virginia, for Appellee. **ON
BRIEF:** Paul J. McNulty, United States Attorney, Brian R. Hood,
Assistant United States Attorney, Alexandria, Virginia, for Appellant.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

In this case, the Government used information provided by an anonymous computer hacker to initiate a search which produced evidence that William Jarrett violated federal statutes prohibiting the manufacture and receipt of child pornography. The district court suppressed this evidence on the ground that the hacker acted as a Government agent, and so violated the Fourth Amendment, when he procured pornographic files from Jarrett's computer. The Government appeals. Because the Government did not know of, or in any way participate in, the hacker's search of Jarrett's computer at the time of that search, the hacker did not act as a Government agent. Accordingly, we reverse and remand for further proceedings.

I.

The parties do not dispute the underlying facts. Prior to his involvement in the case at hand, the hacker, referred to as Unknownuser, provided information through emails during July 2000 to the FBI and law enforcement agents in Alabama regarding a child pornographer, Dr. Bradley Steiger. In an early email, Unknownuser identified himself only as someone "from Istanbul, Turkey," who could not "afford an overseas phone call and cannot speak English fluently."

Employing the same method that he would later use to hack into Jarrett's computer, Unknownuser obtained access to Steiger's computer via a so-called Trojan Horse program that Unknownuser had attached to a picture he posted to a news group frequented by pornography enthusiasts. When Steiger downloaded the picture to his own computer, he inadvertently downloaded the Trojan Horse program, which then permitted Unknownuser to enter Steiger's computer undetected via the Internet. *See United States v. Steiger*, 318 F.3d 1039, 1044 (11th Cir. 2003). After searching Steiger's hard drive and finding evidence of child pornography, Unknownuser copied certain files and then emailed the information to the law enforcement officials who used it to identify and apprehend Steiger. A jury convicted Steiger of violating various federal statutes prohibiting the sexual

exploitation of minors. He was sentenced to 210 months in prison. *Id.* at 1045.[1]

Shortly after Steiger was indicted, in late November 2000, FBI Special Agent James Duffy, who served as Legal Attache for the FBI in Turkey, contacted Unknownuser via email and phone. In addition to informing Unknownuser that he would not be prosecuted for his assistance in apprehending Steiger, Duffy requested a meeting and posed a series of questions to Unknownuser, with the hope that Unknownuser would reveal his identity and perhaps agree to testify at Steiger's trial. Although Unknownuser was quite forthcoming in his responses, he refused to meet with Agent Duffy, stating emphatically that he would never allow himself to be identified. Agent Duffy closed this exchange (in an email dated December 4, 2000) by thanking Unknownuser for his assistance and stating that "If you want to bring other information forward, I am available."

Five months later, Agent Duffy contacted Unknownuser via email, informing him of a postponement in the Steiger trial, thanking him again for his assistance, and assuring him that he would not be prosecuted for his actions should he decide to serve as a witness in the Steiger trial. Unknownuser responded, repeating that he had no intention of revealing his identity.

The next contact between Unknownuser and law enforcement did not occur until December 3, 2001, almost seven months later, when Unknownuser sent an unsolicited email to his contact at the Montgomery, Alabama Police Department, Kevin Murphy, informing Murphy that he had "found another child molester . . . from Richmond, VA" and requesting contact information for someone at the FBI dealing with these sorts of crimes. The alleged child molester referred to in the email was William Jarrett.

---

[1]Steiger appealed his conviction on the ground that the evidence obtained from Unknownuser, which provided a partial basis for the search warrant, should have been suppressed because Unknownuser acted as an agent of the Government when he hacked into Steiger's computer. The Eleventh Circuit rejected this argument, reasoning that Unknownuser acquired all of the relevant information about Steiger before he contacted law enforcement, and thus was, at all material times, acting as a private individual. *Steiger*, 318 F.3d at 1045-46.

After contacting the FBI, Murphy informed Unknownuser that the FBI preferred that Unknownuser send the new information to Murphy's email address. On December 4, 2001, Unknownuser sent thirteen email messages to Murphy, including a ten-part series of emails with some forty-five attached files containing the "evidence" that Unknownuser had collected on Jarrett. Murphy forwarded the information to agents at the FBI, who initiated an investigation.

Based on the information provided by Unknownuser, the Government filed a criminal complaint and application for a search warrant against Jarrett on December 13, 2001. After receiving authorization from the district court, the FBI promptly executed the search warrant and arrested Jarrett.[2]

Several days after Jarrett's arrest, on December 16, 2001, Agent Duffy sent Unknownuser an email informing him of Steiger's sentence and thanking Unknownuser for his assistance in the case. At the time, Duffy was unaware of the Jarrett investigation. The next day, Unknownuser replied, informing Duffy of his efforts to identify Jarrett and inquiring why he had heard nothing since he sent the Jarrett files to Murphy on December 4. Unknownuser sent a similar message the following day (December 18) indicating that he had read about Jarrett's arrest in the newspaper and asking Agent Duffy to have Agent Margaret Faulkner — a special agent based in Alabama who had been involved in the Steiger investigation — contact him. On December 19, 2001, Agent Duffy sent an email to Unknownuser thanking him again for his assistance, providing information on the Jarrett investigation and prosecution, and requesting that Unknownuser maintain email contact with Agent Faulkner via her personal email address.

---

[2]The district court noted that authorities arrested Jarrett on the thirteenth or the fourteenth of December. At the hearing on Jarrett's suppression motion, the court explained that "[t]he affidavit that supplied the probable cause for the search warrant was based on files obtained from the defendant's computer by an anonymous hacker using an email address of 'unknown user.' By illegally hacking onto the defendant's computer through the internet, the 'unknown user' searched the defendant's computer files, copied information, and forwarded the information to the government."

Three weeks later, on January 9, 2002, a grand jury indicted Jarrett on one count of manufacturing child pornography in violation of 18 U.S.C.A. § 2251(a) (West 2000) and seven counts of receiving child pornography in violation of 18 U.S.C.A. § 2252A(a)(2)(A) (West 2000). Jarrett moved to suppress the evidence obtained through the execution of the search warrant on the ground that the Government violated his Fourth Amendment rights in using the information provided by Unknownuser to secure the search warrant. The district court denied the motion. Jarrett then entered a conditional guilty plea to a one-count criminal information charging him with manufacturing child pornography.

Prior to sentencing, however, Jarrett moved to reconsider his earlier motion to suppress on the basis of new evidence — a series of emails exchanged between Unknownuser and FBI agent Faulkner, beginning shortly after Jarrett's arrest and extending for almost two months. The Government did not disclose these emails until after Jarrett had entered his guilty plea.

In the initial email in this series, dated December 19, 2001, Agent Faulkner explicitly thanked Unknownuser for providing the information to law enforcement officials. She then engaged in what can only be characterized as the proverbial "wink and a nod":

> I can not ask you to search out cases such as the ones you have sent to us. That would make you an agent of the Federal Government and make how you obtain your information illegal and we could not use it against the men in the pictures you send. But if you should happen across such pictures as the ones you have sent to us and wish us to look into the matter, please feel free to send them to us. We may have lots of questions and have to email you with the questions. But as long as you are not 'hacking' at our request, we can take the pictures and identify the men and take them to court. We also have no desire to charge you with hacking. You are not a US citizen and are not bound by our laws.

Over the course of the next two months, Agent Faulkner sent at least four additional email messages, which constituted, in the words of the district court, a "'pen-pal' type correspondence" with Unknownuser.

In addition to expressing gratitude and admiration for Unknownuser, Faulkner repeatedly sought to reassure Unknownuser that he was not a target of law enforcement for his hacking activities. For example, in an email dated January 29, 2002, she stated that

> the FACT still stands that you are not a citizen of the United States and are not bound by our laws. Our Federal attorneys have expressed NO desire to charge you with any CRIMI-NAL offense. You have not hacked into any computer at the request of the FBI or other law enfor[ce]ment agency. You have not acted as an agent for the FBI or other law enforcement agency. Therefore, the information you have collected can be used in our criminal trials.

In his responses to Agent Faulkner, Unknownuser spoke freely of his "hacking adventures" and suggested in no uncertain terms that he would continue to search for child pornographers using the same methods employed to identify Steiger and Jarrett. As found by the district court, Agent Faulkner, despite her knowledge of Unknownuser's illegal hacking, "never instruct[ed] Unknownuser that he should cease hacking."

Upon consideration of this series of emails, the district court reversed its earlier decision and suppressed the evidence obtained during the search of Jarrett's residence. At the same time, the court deemed Jarrett's motion to reconsider as a motion to withdraw his guilty plea, which it promptly granted. The court reasoned that the "totality of all the contact between law enforcement and Unknownuser encourage[d] Unknownuser to continue his behavior and to remain in contact with the FBI." The district court thus concluded that the Government and Unknownuser had "expressed their consent to an agency relationship," thereby rendering any evidence obtained on the basis of Unknownuser's hacking activities inadmissible on the ground that it was procured in violation of Jarrett's Fourth Amendment rights.

## II.

In considering the Government's appeal of the district court's suppression ruling, we have jurisdiction pursuant to 18 U.S.C.A. § 3731

(West Supp. 2003). We review the district court's factual findings for clear error and its legal determinations *de novo*. *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as "instrument[s] or agent[s]" of the Government. *See* U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). It does not provide protection against searches by private individuals acting in a private capacity. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official" (internal quotation marks and citation omitted)). Thus, "'evidence secured by private searches, even if illegal, need not be excluded from a criminal trial.'" *Ellyson*, 326 F.3d at 527 (quoting *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir. 1992)); *see also United States v. Walter*, 447 U.S. 649, 656 (1980) ("[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully." (citing *Coolidge*, 403 U.S. at 487-90)).

Determining whether the requisite agency relationship exists "necessarily turns on the degree of the Government's participation in the private party's activities, . . . a question that can only be resolved 'in light of all the circumstances.'" *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614-15 (1989) (quoting *Coolidge*, 403 U.S. at 487). This is a "a fact-intensive inquiry that is guided by common law agency principles." *Ellyson*, 326 F.3d at 527 (citation omitted). The defendant bears the burden of proving that an agency relationship exists. *Id.* (citation omitted).

In order to run afoul of the Fourth Amendment, therefore, the Government must do more than passively accept or acquiesce in a private party's search efforts. Rather, there must be some degree of Government participation in the private search. In *Skinner*, for example, the Supreme Court found that private railroads, in performing drug tests

on their employees in a manner expressly encouraged and authorized under Government regulations, acted as Government agents sufficient to implicate the Fourth Amendment. *Skinner*, 489 U.S. at 615-16. As the Court concluded, "specific features of the regulations combine to convince us *that the Government did more than adopt a passive position toward the underlying private conduct.*" *Id.*, 489 U.S. at 615 (emphasis added).

Following the Supreme Court's pronouncements on the matter, the Courts of Appeals have identified two primary factors that should be considered in determining whether a search conducted by a private person constitutes a Government search triggering Fourth Amendment protections. These are: (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation. *See, e.g.*, *United States v. Paige*, 136 F.3d 1012, 1017-18 (5th Cir. 1998); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987); *United States v. Walther*, 652 F.2d 788, 791-92 (9th Cir. 1981). Although we have never articulated a specific "test," we too have embraced this two-factor approach, which we have compressed into "[o]ne highly pertinent consideration." *See Ellyson*, 326 F.3d at 527 ("One highly pertinent consideration is 'whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose for conducting the search was to assist law enforcement efforts or to further her own ends.'" (quoting *Feffer*, 831 F.2d at 739)).

In this case, the Government concedes the existence of the second factor — that Unknownuser's motivation for conducting the illicit searches stemmed solely from his interest in assisting law enforcement authorities. Thus, the only question before us concerns the first factor — did the Government know of and acquiesce in Unknownuser's search in a manner sufficient to transform Unknownuser into an agent of the Government, and so render the search unconstitutional.

In seeking to give content to this factor, we have required evidence of more than mere knowledge and passive acquiescence by the Government before finding an agency relationship. *See Ellyson*, 326 F.3d at 527-28. Our sister circuits have reasoned similarly. *See, e.g.*,

*United States v. Smythe*, 84 F.3d 1240, 1242-43 (10th Cir. 1996) ("[K]nowledge and acquiescence . . . *encompass the requirement* that the government must also affirmatively encourage, initiate or instigate the private action." (citation omitted) (emphasis added));[3] *United States v. Koenig*, 856 F.2d 843, 850 (7th Cir. 1988) ("It is only by the exercise of some form of control that the actions of one may be attributed to another. Mere knowledge of another's independent action does not produce vicarious responsibility absent some manifestation of consent and the ability to control." (citations omitted)); *Walther*, 652 F.2d at 792 ("Mere governmental authorization of a particular type of private search in the absence of more active participation or encouragement is similarly insufficient to require the application of fourth amendment standards." (citations omitted)).

Viewed in the aggregate, then, three major lessons emerge from the case law. First, courts should look to the facts and circumstances of each case in determining when a private search is in fact a Government search. Second, before a court will deem a private search a Government search, a defendant must demonstrate that the Government knew of and acquiesced in the private search and that the private individual intended to assist law enforcement authorities. Finally, simple

---

[3]The Government contends that *Smythe* imposes a three-factor test, mandating, in addition to the two factors stated in text, a requirement that a defendant demonstrate that the Government has "affirmatively encourage[d], initiate[d] or instigate[d] the private action." Brief of Appellant at 22. This argument ignores the language from *Smythe* emphasized above. Nor do any of the other cases relied on by the Government as requiring proof of a three-factor test so hold. Rather, they disavow "any specific 'standard' or 'test'" as too "oversimplified or too general to be of help," *see United States v. Pervaz*, 118 F.3d 1, 6 (1st Cir. 1997), or expressly recognize the two factors, which we have employed, as the "[i]nitial[ ]" or "critical factors" and then cite evidence of Government "encouragement" etc. simply as "[o]ther useful criteria." *See United States v. McAllister*, 18 F.3d 1412, 1417-18 (7th Cir. 1994); *United States v. Marlbrough*, 922 F.2d 458, 462 (8th Cir. 1992). Thus, these cases do not conflict with, or present any reason to change, our own emphasis on the two principal factors, recognizing that evidence of Government encouragement or participation is of course relevant in determining the existence of the first factor, *i.e.*, Government knowledge and acquiescence sufficient to make a private person a Government agent.

acquiescence by the Government does not suffice to transform a private search into a Government search. Rather, there must be some evidence of Government participation in or affirmative encouragement of the private search before a court will hold it unconstitutional. Passive acceptance by the Government is not enough.

With these principles in mind, we turn to the case at hand.

III.

With respect to factfinding, the district court found the facts as we have recounted them above. The record adequately supports these findings; certainly they are not clearly erroneous.

The district court's conclusions of law, however, present problems. The court concluded that Unknownuser's extensive post-search email exchange with Agent Faulkner, together with the brief exchanges between Unknownuser and Agent Duffy in November and December 2000 (one year prior to the Jarrett search) and May 2001 (seven months prior to the Jarrett search), demonstrated that the Government had an "ongoing relationship" with Unknownuser sufficient to make Unknownuser an agent of the Government. Specifically, the court held that in light of the Government's collective efforts to praise Unknownuser for his assistance, its repeated requests for further assistance, its assurances that Unknownuser would not be prosecuted for his hacking activities, and its refusal to suggest that Unknownuser should cease hacking, "there was far more than mere knowledge on the government's part."

Although, as the Government conceded at oral argument, the Faulkner email exchange probably does constitute the sort of active Government participation sufficient to create an agency relationship going forward (absent other countervailing facts), the district court erred in relying on this exchange to find that the Government knew of and acquiesced in the Jarrett search. This is so because Unknownuser's email exchange with Faulkner took place *after* Unknownuser had hacked into Jarrett's computer, *after* the fruits of Unknownuser's hacking had been made available to the FBI, *after* Jarrett's home and computer had been searched, and *after* Jarrett himself had been arrested. Thus, Faulkner's knowledge and acquiescence

was entirely post-search. Such after-the-fact conduct cannot serve to transform the prior relationship between Unknownuser and the Government into an agency relationship with respect to the search of Jarrett's computer.

As for the November-December 2000 and May 2001 exchanges between Unknownuser and Agent Duffy, although they did occur prior to the Jarrett search, all of these exchanges were brief and took place seven to twelve months before the Jarrett search. Moreover, these exchanges consisted of nothing more than perfunctory expressions of gratitude for Unknownuser's assistance in the Steiger investigation, assurances that Unknownuser would not be prosecuted should he decide to testify as a witness in the Steiger trial, and a vague offer of availability to receive more information in the future. Without more, these exchanges do not suffice to create an agency relationship that would embrace the Jarrett search. Were we to allow the Duffy communications to effect such an agency relationship, virtually any Government expression of gratitude for assistance well prior to an investigation would effectively transform any subsequent private search by the party into a Government search. We find no support for such a position in the existing case law, and we decline to extend the protections of the Fourth Amendment to embrace it.[4]

Although the Government operated close to the line in this case, it did not (at least on the evidence before the district court) demonstrate the requisite level of knowledge and acquiescence sufficient to make

---

[4]The district court and Jarrett cite only a single appellate decision upholding a suppression ruling in a context at all similar to that at hand. *See United States v. Walther*, 652 F.2d 788 (9th Cir. 1981). There, the Ninth Circuit held that an airline employee who had previously worked as a paid, confidential informant for the DEA, acted as a Government agent when he searched an overnight case shipped via the airline with the expectation that he would receive a reward. The court reasoned that "the government cannot knowingly acquiesce in and encourage directly or indirectly a private citizen to engage in activity which it is prohibited from pursuing where that citizen has no motivation other than the expectation of reward from his or her efforts." *Id.* at 793. *Walther* offers no assistance to Jarrett. Unlike the informant in *Walther*, Unknownuser never received any sort of reward for his efforts, nor did he ever appear to expect such a reward.

Unknownuser a Government agent when he hacked into Jarrett's computer. When Unknownuser came forward with the Jarrett information, he had not been in contact with the Government for almost seven months, and nothing indicates that the Government had any intention of re-establishing contact with him. The only communications that could possibly be construed as signaling an agency relationship prior to the search of Jarrett's computer (the Duffy communications from November-December 2000 and May 2001) were simply too remote in time and too tenuous in substance to bring the Jarrett search within the scope of an agency relationship.

That the Government did not actively discourage Unknownuser from engaging in illicit hacking does not transform Unknownuser into a Government agent. Although the Government's behavior in this case is discomforting,[5] the Government was under no special obligation to affirmatively discourage Unknownuser from hacking. *See Coolidge*, 403 U.S. at 488 ("[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals."); *United States v. Souza*, 223 F.3d 1197, 1202 (10th Cir. 2000) (holding that police are under no duty to discourage citizens from conducting searches of their own volition).

At the end of the day, in order to bring Unknownuser within the grasp of an agency relationship, Jarrett would have to show that the Government made more explicit representations and assurances (as in the post-hoc Faulkner emails) that it was interested in furthering its relationship with Unknownuser and availing itself of the fruits of any information that Unknownuser obtained. Although evidence of such "encouragement" would not have to target a particular individual, it would have to signal affirmatively that the Government would be a ready and willing participant in an illegal search.

---

[5]Notwithstanding the Government's assumptions, nothing in the record establishes that Unknownuser is a foreign national and, even if he is, of course, foreign nationals can, as the Government conceded, be prosecuted in the United States for sending and receiving child pornography. Unauthorized hacking also violates United States law.

As the facts in this case make clear, no such relationship existed between Unknownuser and the Government when Unknownuser hacked into Jarrett's computer. Accordingly, we hold that the district court erred when it found that Unknownuser acted as an agent of the Government when he hacked into Jarrett's computer.

## IV.

For the reasons set forth within, we reverse the judgment of the district court suppressing the evidence obtained from William Jarrett's residence and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*