**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-4406**

———————————

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

        versus

THOMAS C. MOSER,

                                    Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:05-cr-00443-RDB)

———————————

Submitted:  May 9, 2007              Decided:  August 10, 2007

———————————

Before TRAXLER and KING, Circuit Judges, and T. S. ELLIS, III,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Robert M. Gamburg, Philadelphia, Pennsylvania, for Appellant. Rod
J. Rosenstein, United States Attorney, Jennifer A. Wright,
Assistant United States Attorney, Andrew G. W. Norman, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas Moser appeals from his 2006 convictions and sentence imposed in the District of Maryland for three offenses: (1) traveling in interstate commerce for the purpose of engaging in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b); (2) using the mail and interstate commerce to entice a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b); and (3) offering in interstate commerce to obtain control of a minor, with intent to promote sexually explicit conduct by such minor and to produce visual depictions of such conduct, in violation of 18 U.S.C. § 2251A(b)(2)(A) ("Count Three"). Moser presents two contentions of error in this appeal: first, that the written statement he made to federal agents following his 2005 arrest in Maryland was involuntary and thus inadmissible; and second, that the trial court's instruction concerning the statutory term "control" on Count Three constituted reversible error. As explained below, we reject Moser's contentions and affirm.

I.

The events leading to Moser's arrest began on May 26, 2005, when Postal Inspector Clayton Gerber ("Inspector Gerber") entered an existing Yahoo! chat room on the Internet using the assumed identity of a woman named "Kelly Mason." Under the screen name "kelly_mason76," Inspector Gerber posed as the mother of two young

2

daughters with hobbies including family time and "videos." Not long after he entered the chat room (whose title included the word "incest"), Inspector Gerber received an unsolicited message from Moser. Moser used the screen name "tomassjr6969" to communicate with Kelly, and his accompanying profile indicated that he was a single thirty-six-year-old man living in Pennsylvania. During this first chat session, Kelly asserted that she had two daughters, ages twelve and fourteen. Moser, in response, indicated that he had two children of his own, asked Kelly if she came to the chat room looking for some fun, and indicated an interest in making videos with Kelly and her children.

Over the next four months, Moser and Inspector Gerber (posing as Kelly Mason), continued to converse online. During their conversations, Moser offered to visit Kelly's Maryland home and engage in a variety of sexual activities with her daughters. Moser also asked if he could videotape the encounters and inquired whether he could be alone with Kelly's children during those activities. In approximately fifteen online conversations and in various emails, Moser related in graphic detail the sexual activities that he wished to engage in with Kelly's daughters.[1] Moser also sent letters by mail to Kelly's fictitious daughters,

---

[1]In addition to the communications described above, Moser emailed several photographs to Kelly with the request that she show them to her daughters. These included pictures of Moser's face as well as his naked torso and genitalia.

Lisa and Jessie. In these letters, Moser described the sexual education he planned to provide the girls and asked Lisa, the purported fourteen-year-old, if he could be alone with her when he came to Maryland. In his conversations with Kelly and in his letters to Lisa and Jessie, Moser discussed bringing his own eleven-year-old daughter with him to Maryland so that she could also receive a "sex education." Moser also advised Kelly that he was accustomed to being awake at night because he often worked the night shift.

Inspector Gerber, still posing as Kelly Mason, arranged to meet Moser at a restaurant in Frederick, Maryland, on September 9, 2005. Moser believed he was meeting Kelly to spend the weekend making pornographic videos with her daughters. To this end, Moser took condoms, lubricant, video and digital cameras, and X-rated movies to Maryland with him in his pickup truck. Moser drove approximately three hours from northeastern Pennsylvania to Maryland and arrived for the meeting in Frederick at about 6:45 p.m. on September 9. He was promptly arrested by the authorities (at 6:50 p.m.), and transported to the Frederick County Law Enforcement Center.

After being advised of his Miranda rights,[2] Moser agreed to be questioned without an attorney, and he signed a written Miranda warning and waiver of rights form at 7:10 p.m. Inspector Gerber

_____

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

4

and federal Immigration and Customs Agent Augustus Aquino ("Agent Aquino") interviewed Moser until about 10:15 p.m. During this time, Moser gave the agents an oral statement, agreed to give them a written statement, and signed a second <u>Miranda</u> warning and waiver of rights form.[3] Moser completed and signed his written statement (the "Statement") at 3:55 a.m. on September 10, 2005.

Accordingly, from the time of his arrest until the completion of the Statement, Moser was with the agents for nearly nine hours. During this time, Moser was encouraged to eat and drink, he was given breaks to compose himself, and he was allowed several trips to the restroom. Indeed, one such break lasted approximately thirty minutes. Although Moser asserted later that he was emotionally drained, "very, very tired," and not in the "right train of thought" when he began preparing the Statement, J.A. 71-72, Inspector Gerber and Agent Aquino both testified that Moser never requested that the interview be terminated, never indicated he was too tired to continue, and did not otherwise demonstrate any reluctance to be interviewed.[4]

---

[3]As noted, Moser gave oral and written statements to the agents following his arrest. Because he has not challenged the prosecution's use of his oral statement at trial, we assess only the admissibility of his written statement.

[4]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal. Citations to "S.J.A. ___" refer to the Supplemental Joint Appendix filed herein.

Before writing the Statement, Moser signed the advice of rights portion of the statement form, indicating that Inspector Gerber had advised him of his <u>Miranda</u> rights at 10:15 p.m. This portion of the form reflects that Moser understood his rights, that he was willing to give a statement and answer questions, that he did not desire the assistance of a lawyer, that no promises or threats had been made to him and no pressure or coercion had been used against him, and that he was voluntarily making the Statement. Similarly, the form indicates that Moser had read the Statement and that it was true and correct, that he had been given an opportunity to make changes to it, that he had not sought the advice or presence of a lawyer in its preparation, and that he did not at any time request that his interview be terminated.

In the body of the Statement, Moser explains that he began chatting with Kelly in a Yahoo! chat room at some point during the previous year. Moser stated that during the preceding several months, he had chatted online with Kelly once or twice a week. The two discussed Kelly's daughters, Lisa and Jessie, whom he believed to be fourteen or fifteen and twelve or thirteen, respectively. Specifically, Moser and Kelly discussed providing "safe sex education" to the girls, which would consist of Moser engaging in oral, vaginal, and anal intercourse with them. S.J.A. 3-4. Moser asserted that he was planning to help Kelly with her children's education in the hope that he could start a relationship with her.

6

At the end of the Statement, Moser thanked the agents for arresting him before he could make the biggest mistake of his life.

Moser was indicted by the grand jury on September 22, 2005, and he filed a motion to suppress the Statement on October 7, 2005. On November 21, 2005, the court conducted an evidentiary hearing on Moser's suppression motion and denied it from the bench. In so ruling, the court concluded that the Statement "was voluntary, made after the appropriate advice of <u>Miranda</u> warnings, and that [Moser's] will to make those statements was not in [any] way overborne or his capacity for self-determination critically impaired by any type of coercive Government conduct." J.A. 97-98. The court also determined that Moser was "clearly . . . advised of his right to stop," that he had failed to show any proof of intimidation, and that he was not "credible [in] indicating that he was overly pressured." <u>Id.</u> at 96-97.

The Statement was introduced into evidence at Moser's jury trial in Baltimore. On January 9, 2006, the jury returned a guilty verdict on all three counts of the Indictment. Thereafter, on March 31, 2006, Moser was sentenced to a total of 360 months of imprisonment.[5] He timely noted this appeal on April 7, 2006, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[5]Moser was sentenced to concurrent terms of imprisonment of 235 months on Count One, 235 months on Count Two, and 360 months on Count Three.

II.

In assessing a district court's ruling on a suppression motion, "[w]e review . . . factual findings for clear error and . . . legal determinations de novo." United States v. Jarrett, 338 F.3d 339, 343-44 (4th Cir. 2003) (citations omitted). Accordingly, "[i]n reviewing the denial of [a] motion to suppress, we must accept the factual findings of the district court unless clearly erroneous, but we review de novo the conclusion of the district court that . . . statements were voluntary." United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005).

When an assertion of appellate error is made concerning a trial court's unobjected-to instruction, we review that contention for plain error only. In so doing, we apply the principles of United States v. Olano, assessing: (1) whether there was error; (2) whether it was plain; and (3) whether it affected the defendant's substantial rights. 507 U.S. 725, 732 (1993). If these conditions are satisfied, we may exercise our discretion to notice the error, but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (citations and internal quotation marks omitted). On plain error review, "[i]t is the defendant rather than the Government who bears the burden of persuasion." Id. at 734.

III.

A.

The issue of whether Moser's Statement was properly admitted into evidence turns on whether the district court properly ruled that he gave it to the agents voluntarily. Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . without due process of law." U.S. Const. amend V. A statement of an accused, however, is "involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997) (en banc) (citing Oregon v. Elstad, 470 U.S. 298, 304 (1985)). We assess such a voluntariness issue by examining de novo the "totality of the circumstances," including the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." United States v. Pelton, 835 F.2d 1067, 1071 (4th Cir. 1987) (citing United States v. Wertz, 625 F.2d 1128, 1134 (4th Cir. 1980)). Under the totality of the circumstances, a statement is involuntary if the accused's will was "overborne" or his "capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). As the Supreme Court observed in Colorado v. Connelly, "coercive police activity is a necessary predicate to the finding that a confession is not

'voluntary' within the meaning of the Due Process Clause." 479 U.S. 157, 167 (1986).

Moser contends on appeal that, when he gave the Statement, his will was overborne and his capacity for self-determination critically impaired due to the length of his interview, because he ate insufficiently during it, and because he had only slept a few hours prior to his arrest. Moser also contends that the agents pressured him into giving the Statement by telling him that Kelly and her daughters had already given statements. Accordingly, Moser asserts that the district court erred in concluding that the Statement "was voluntary, made after the appropriate advice of Miranda warnings, and that [Moser's] will to make those statements was not in [any] way overborne or his capacity for self-determination critically impaired by any type of coercive Government conduct." J.A. 97-98.

Under the totality of the relevant circumstances, Moser has failed to demonstrate any coercive Government conduct. During his interview, Moser was permitted to take numerous restroom breaks and to compose himself, and he was encouraged to eat and drink. Moser was not intoxicated, sick, or hurt during the interview and, under the circumstances, its duration was not excessive. Indeed, Moser never indicated that he was too tired to continue, and he acknowledged that he was accustomed to being awake during the late night hours. Importantly, it is undisputed that Moser was fully

10

advised of his <u>Miranda</u> rights and signed two forms spelling out his understanding of those rights and his desire to give a statement.

Moser also maintains that he was pressured into giving his Statement when Inspector Gerber and Agent Aquino asserted that Kelly and her daughters had already made statements. The district court, however, concluded that Moser was not "credible [in] indicating that he was overly pressured." J.A. 96-97. We are, of course, obliged to accept the court's findings of fact unless they are clearly erroneous. <u>Pelton</u>, 835 F.2d at 1072 (citations omitted). Under these circumstances, those facts are not clearly erroneous, and the agents thus did not utilize any coercive tactics, violence, improper threats, or promises to elicit Moser's challenged Statement. Accordingly, we reject his contention that the Statement was made involuntarily and sustain its admission against him at trial.

### B.

Moser next contends that his conviction on Count Three is invalid because the district court erroneously instructed the jury on the meaning of the term "control" under the statute. <u>See</u> 18 U.S.C. § 2251A(b)(2).[6] Specifically, Moser maintains that the instructions erroneously conflated the element of control, on the

---

[6]As noted above, Count Three charged Moser with "offer[ing] to obtain control of a minor, with [the] intent to promote the engaging in of sexually explicit conduct by such minor for the purpose of producing visual depictions of such conduct." J.A. 10.

11

one hand, and the element of sexual intent, on the other, impermissibly reducing the prosecution's burden of proof.

On Count Three, the court instructed the jury that, in order for the prosecution to sustain its burden of proof, it was obliged to prove six essential elements beyond a reasonable doubt. J.A. 832. This list of essential elements began: "One, that the defendant offered to obtain control over a minor. Two, that he did so with the intent to promote the engaging in of sexually explicit conduct by a minor." Id. After listing the other four essential elements, the court also instructed the jury, in relevant part, that "[c]ontrol means the power to manage, command, direct or restrain another person." Id. The court instructed the jury "that engaging in sexually explicit conduct with a minor is in fact obtaining control." Id. at 833. It cautioned the jury, however, that if "you find that the Government has not proved that the defendant intended to engage in such conduct, then you must find him not guilty of the charge in Count III." Id. More specifically, the court instructed the jury that if it found

> that Mr. Moser did offer to obtain control over persons he believed to be either a 14-year-old named Lisa Mason or a 12-year-old named Jessie Mason as I have defined obtaining control and that he did so with the intent to promote the engaging in of sexually explicit conduct for the purpose of creating a visual depiction thereof, then you may find him guilty of the offense charged in Count III even though he did not actually engage in sexually explicit conduct with a minor as long as you find beyond a reasonable doubt that the Government has proven all the elements of the offense as I have outlined them for you.

12

Id. (emphasis added).

Moser failed to object to these instructions at trial, and we thus assess this appellate contention for plain error only. In reviewing for plain error, we first assess whether any error occurred at all. Olano, 507 U.S. at 732. This assessment implicates our decision in United States v. Buculei, where we had the opportunity to examine the statutory term "custody or control," recognizing that the term is defined in 18 U.S.C. § 2256(7) as "including temporary supervision over or responsibility for a minor whether legally or illegally obtained." 262 F.3d 322, 331-32 (4th Cir. 2001). In Buculei, we observed that "control" under § 2251A need not be synonymous with parental consent or knowledge, but "involves something more than mere persuasion, inducement, or coercion." Id. at 332. There, as here, the trial court had instructed the jury that "control" is "the power to manage, command, direct or restrain another person." Id. at 332 n.9. We found no error in that instruction, and concluded that it fairly represented the pertinent language of the relevant statute. Because the instructions to Moser's jury also defined "control" as "the power to manage, command, direct or restrain another person," this aspect thereof was entirely proper. J.A. 832.

The district court in this case also instructed Moser's jury, however, "that engaging in sexually explicit conduct with a minor is in fact obtaining control." Id. at 833. Moser contends that

13

this aspect of the instructions renders them plainly erroneous, in that the court conflated the element of control with the separate element of sexual intent. Additionally, Moser asserts that, because the evidence reflects that all involved were willing participants, he did not offer to assume the statutorily requisite control.

When viewed in isolation, this aspect of the instructions arguably runs afoul of our conclusion in Buculei that "control" involves more than mere persuasion. It is well settled, however, that "we do not examine jury instructions in isolation." United States v. Ryan-Webster, 353 F.3d 353, 364 n.17 (4th Cir. 2003); see also Jones v. United States, 527 U.S. 373, 391 (1999) (cautioning that "instructions must be evaluated not in isolation but in the context of the entire charge," and noting that "instructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions"). Instead, "in reviewing jury instructions, we 'accord the district court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law.'" United States v. Wills, 346 F.3d 476, 492 (4th Cir. 2003) (quoting Teague v. Bakker, 35 F.3d 978, 985 (4th Cir. 1994)). Accordingly, "[o]n appeal, we examine whether the jury instructions and verdict form, considered as a whole, were sufficient so that the jurors understood the issues and were not misled." United States v. Poirier, 321 F.3d

14

1024, 1032 (11th Cir. 2003)(citations and internal quotation marks omitted).

Having carefully examined as a whole the trial court's instructions relating to Count Three, we are unable to conclude that they were plainly erroneous. Before giving the jury the specific instruction that Moser complains of, the court properly defined control as the "power to manage, command, direct or restrain another person." See J.A. 832; Buculei, 262 F.3d at 332 n.9. It also instructed the jury that, in order to convict on Count Three, it was obliged to find that the prosecution had satisfied beyond a reasonable doubt all six elements of the offense charged. These elements included the separate elements of control and sexual intent. The court further instructed that, in order to find Moser guilty of Count Three, the jury had to find that he offered to obtain control over Lisa and Jessie and that he did so with the intent to promote the engaging in of sexually explicit conduct for the purpose of creating a visual depiction thereof. Viewed as a whole, the instructions on Count Three identified control and sexual intent as two separate and distinct elements and, accordingly, the instructions complained of were not plainly erroneous. This appellate contention thus fails and we need not address the other Olano factors.[7]

---

[7]Even if plain error had occurred here, we would be unable to recognize it in this case. The evidence that Moser offered to obtain control over Lisa and Jessie was overwhelming and permitted

15

IV.

Pursuant to the foregoing, we reject Moser's contentions of error and affirm.

AFFIRMED

---

no other conclusion than that reached by the jury. <u>See, e.g.</u>, <u>United States v. Cedelle</u>, 89 F.3d 181, 186 (4th Cir. 1996) (concluding that when district court fails to charge jury on element of offense of conviction, we will not notice error if evidence would "permit no other conclusion" and defendant's conviction "was inevitable").