**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4264**

---

UNITED STATES OF AMERICA,

  Plaintiff – Appellee,

  v.

WILLIAM ROBERT JEFFERY,

  Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:20-cr-00464-D-1)

---

Argued:  September 25, 2024                    Decided:  November 22, 2024

---

Before GREGORY and HARRIS, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished opinion.  Judge Gibney wrote the opinion, in which Judge Gregory and Judge Harris joined.

---

**ARGUED:**  William Michael Dowling, THE DOWLING FIRM PLLC, Raleigh, North Carolina, for Appellant.  Daniel Bubar, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  J. Brad Polk, Ania Gabriella DeJoy, POLK LAW, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, John L. Gibbons, Assistant United States Attorney, OFFICE OF THE UNITED STATES

ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

GIBNEY, Senior District Judge:

William Robert Jeffery appeals his conviction for knowingly accessing a computer device with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Jeffery challenges the district court's denials of both his motion to suppress evidence seized from his home and his motion for a bill of particulars. Because the district court properly applied the private-search exception to the Fourth Amendment, it correctly denied Jeffery's suppression motion. The district court also did not err in denying Jeffery's motion for a bill of particulars, as the government disclosed sufficient information during the pretrial discovery process to enable Jeffery to prepare an adequate defense. We, therefore, affirm.

## I.

## A.

Jeffery relied on Microsoft's BingImage technology to access child pornography on his laptop. BingImage enables users of Microsoft's search engine, Bing, to perform internet searches using images rather than a traditional keyword search. This works in one of two ways. Users can either upload an image to the internet in search of similar images, or they may place their cursor over an image that someone else already uploaded to the internet, right-click on the image, and select "Visual search."[1] Microsoft then scans the image using the company's image-matching technology, PhotoDNA. After PhotoDNA

---

[1] For example, rather than typing the words "Washington Monument" into an internet search, a user can instead upload a photo of the Washington Monument, and BingImage will find more images of the Washington Monument.

analyzes the image, a new webpage opens with images similar in nature to the one that the user uploaded or right-clicked on.

On October 17, 2019, and January 5, 2020, Jeffery entered online chatrooms, located images of child pornography, and conducted BingImage searches of the images by right-clicking on them. Microsoft scanned the images and determined that they contained child pornography. Microsoft then reported Jeffery's searches to a CyberTipline operated by the National Center for Missing and Exploited Children ("NCMEC"), as required by 18 U.S.C. § 2258A.[2] NCMEC itself viewed the images, confirmed that they were child pornography, and forwarded them to the North Carolina police. Police investigators then viewed the images and likewise determined that they contained "obvious and apparent" child pornography. J.A. 303. Microsoft, NCMEC, and the investigators each viewed the images without obtaining a search warrant.

Based on this information, investigators secured and executed a search warrant of Jeffery's home on March 17, 2020.[3] As the police searched his home, Jeffery willingly told them that he "deleted his internet history routinely, if not daily." J.A. 311. The investigators then seized Jeffery's laptop, from which a forensic analyst later recovered 31

---

[2] Under this statute, Microsoft must report instances of users accessing child pornography once Microsoft obtains actual knowledge of such access. *See* 18 U.S.C. § 2258A(a)(1)(A). The statute does not, however, require Microsoft to actively monitor user activity for attempts to illegally access child pornography. *See id.* § 2258A(f).

[3] After investigators obtained the warrant, Microsoft submitted three more tips to NCMEC—which NCMEC also forwarded to the investigators—related to additional child pornography image searches performed on Jeffery's laptop between October 17, 2019, and January 5, 2020.

images of child sexual abuse material and hundreds of age-difficult and child erotica images. These images lacked metadata because of Jeffery's efforts to sanitize his laptop. The analyst also reviewed the laptop's internet history and found it similarly "bereft" of information due to Jeffery's cleansing efforts. J.A. 346. But the analyst ultimately pieced together some of Jeffery's searches, which included nearly 3,000 clicks related to an online chatroom website called Chatropolis. Those clicks included sixteen BingImage searches generated off Chatropolis webpages on February 22, 2020. Although the analyst could not view the precise images, Jeffery's internet history included some links that remained functional, including links to a documented child erotica series.

## B.

On November 14, 2020, a federal grand jury indicted Jeffery on one count of knowingly possessing child pornography on or about June 16, 2020, in violation of 18 U.S.C. § 2252A(a)(5)(B). Two-and-a-half weeks later, the grand jury returned its first superseding indictment, which charged Jeffery with the same offense, but with a revised date of March 17, 2020.

Jeffery filed a motion to suppress, arguing that Microsoft and NCMEC both illegally searched his laptop and online browsing activity. The district court conducted an evidentiary hearing on Jeffery's motion. The government could not produce the individual Microsoft employees who initially reviewed the images because Microsoft does not track this information. As a result, the government instead called three individuals who

5

described the typical step-by-step process by which evidence makes its way from Microsoft to the police.[4]

In any case where PhotoDNA detects a potential child pornography search, a Microsoft employee performs an "eyes-on review" of the image to verify its content. J.A. 128. If Microsoft finds child pornography, the company prepares and sends a CyberTip report to NCMEC.[5] Among other information, the reports contain descriptors for certain image types, such as "B2" for images of pubescent minors engaging in lascivious exhibition. J.A. 170–71. Microsoft's CyberTip reports are not pre-populated, meaning that a human reviewer looks at the images *before* characterizing them as pornographic.

In this case, two CyberTip reports formed the basis of the search warrant. Both reports included descriptors indicating that the images in Jeffery's BingImage searches were child pornography. The reports also included the question, "Did Reporting ESP view entire contents of uploaded file?" J.A. 130. The response on each report was "Yes." *Id.* These affirmative entries meant "that someone at Microsoft reviewed the image[s] before they were transmitted to NCMEC." *Id.*

Upon receiving the CyberTip reports from Microsoft, NCMEC confirmed that the images were child pornography. Without altering either the images or the descriptors,

---

[4] The government called the following witnesses, among others, to testify: (1) Nathan Feltner, an in-house attorney at Microsoft; (2) Fallon McNulty, a program manager for NCMEC's CyberTipline; and (3) Zeke Morse, a detective who investigated Jeffery's case.

[5] *See supra* note 2.

6

NCMEC then forwarded the CyberTip reports to the police. A police investigator reviewed the CyberTips and associated images and likewise confirmed that the images were child pornography. Like NCMEC, the police did not alter the files in any way. The investigator then obtained the search warrant that resulted in this case.

Although Microsoft, NCMEC, and the police analyzed the pornographic images in sequence, they did not form a team that worked together. Microsoft independently checked the images because it has a reputational interest in ensuring that it is not a supplier of child pornography. In other words, the police did not seek out this information or direct Microsoft to collect it.

Following the evidentiary hearing, the district court denied Jeffery's suppression motion. The court concluded (1) that Jeffery had no reasonable expectation of privacy in the image searches; (2) that even if Jeffery had a reasonable expectation of privacy in the image searches, no impermissible search occurred under the private-search exception to the Fourth Amendment; and (3) that the good-faith exception applied to Jeffery's case. The court accordingly denied Jeffery's suppression motion.

C.

Following the evidentiary hearing, Jeffery pleaded not guilty, and the district court set Jeffery's case for trial. Nine days before the start of trial, a grand jury returned a second superseding indictment. Like the first superseding indictment, the second one charged Jeffery with one count of violating 18 U.S.C. § 2252A(a)(5)(B). The actual charge, however, changed from knowingly possessing child pornography, to knowingly accessing a computer device with intent to view child pornography. The second superseding

7

indictment also broadened the applicable time period to "in and around October 2019" through March 17, 2020.  J.A. 246.

Jeffery filed a motion for a bill of particulars two days later.  Jeffery requested more detail "about which internet search(es), clicks, or chatroom activity forms the basis of the charge" and "about the dates associated with the computer data or actions the Government believes constitute the 'access with intent to view.'"  J.A. 251.  The district court denied Jeffery's motion on the first day of trial.

## II.

### A.

Jeffery first challenges the district court's denial of his suppression motion.  "In reviewing the denial of a motion to suppress, we review legal conclusions de novo and factual findings for clear error."  *United States v. Perry*, 92 F.4th 500, 509 (4th Cir. 2024).  "In conducting this review, the Court evaluates the evidence in the light most favorable to the government."  *Id.* (quoting *United States v. Runner*, 43 F.4th 417, 421 (4th Cir. 2022)) (internal quotation marks omitted).  Because the district court properly applied the private-search doctrine, we conclude that the search here was constitutional.

The Fourth Amendment protects against unreasonable government searches, not those performed "by private individuals acting in a private capacity."  *United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010) (quoting *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003)).  Thus, "evidence secured by private searches, even if illegal, need not be excluded from a criminal trial."  *Id.* (quoting *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003)).  This rule, however, comes with two caveats.

First, a private actor may still commit an unconstitutional search if it acted as the government's agent in doing so. *See id.* To determine whether a private actor acted on the government's behalf, courts must consider "(1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motive." *Id.* (quoting *Jarrett*, 338 F.3d at 344). In *Richardson*, we concluded that an internet services provider ("ISP") did not act as a government agent in searching the defendant's emails because the government did not participate in the initial search, did not ask for the ISP to conduct the search, and did not learn of the search until it received an alert from NCMEC. *See id.* at 365–66. These same considerations apply here. Microsoft performed the initial search on its own volition and had an independent reputational interest in preventing Jeffery from using BingImage to search for child pornography. The government also did not learn of Jeffery's online activity and Microsoft's scan until after receiving a CyberTip report from NCMEC. Thus, Microsoft did not act as a government agent here.

Second, the government may not commit "additional invasions of [the defendant's] privacy" that "exceed[] the scope of the [initial] private search." *United States v. Jacobsen*, 466 U.S. 109, 115 (1984). Jeffery argues that NCMEC's[6] and Morse's eyes-on reviews

---

[6] While the United States Court of Appeals for the Tenth Circuit has held that NCMEC is a government actor, *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), we have no binding precedent instructing as such, and the issue remains an open question. Our conclusion regarding the private-search doctrine is the same whether we consider NCMEC a government actor or a private actor. Therefore, as the district court did, *see* J.A. 236, this opinion assumes without deciding that NCMEC is a government actor.

expanded beyond the scope of Microsoft's initial search because Microsoft's employees did not themselves view the images in question. The district court disagreed, making a factual finding that the Microsoft process involved an eyes-on review. Because the clear error standard applies to this factual determination, we must "consider the evidence in the light most favorable to the government," *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (quoting *United States v. Seerden*, 916 F.3d 360, 365 (4th Cir. 2019)), and "particularly defer to [the] district court's credibility determinations," *id.* (quoting *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016)). A "court reviewing for clear error may not reverse a lower court's finding of fact simply because it would have decided the case differently." *Id.* (quoting *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012)). Rather, it may do so only if "it is left with the definite and firm conviction" that the lower court committed a mistake. *Id.* (quoting *Wooden*, 693 F.3d at 451). "In other words, '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it.'" *United States v. Barnett*, 48 F.4th 216, 220 (4th Cir. 2022) (quoting *United States v. Wooden*, 887 F.3d 591, 602 (4th Cir. 2018)).

Jeffery cannot show clear error. He essentially challenges the sufficiency of the evidence because the government did not produce the individual Microsoft employees who looked at the images, but instead relied on evidence showing the procedures that Microsoft always uses to examine and report child pornography. But the district court found that the witness from Microsoft "knew from Microsoft processes that an eyes-on review had been conducted" and pointed to additional evidence to support its conclusion. J.A. 227. For example, the CyberTip reports contained affirmative answers that a Microsoft employee

10

had, in fact, viewed the images. The reports also included descriptors that properly categorized the specific content contained in the images, as verified by NCMEC and Morse. Because the district court credited the testimony that CyberTip reports do not contain pre-populated fields, these affirmative answers and descriptors provided further support for the conclusion that a Microsoft employee actually viewed the images at issue.

Finally, working under the conclusion that Microsoft performed an eyes-on review, nothing in the record suggests that NCMEC's or Morse's searches expanded beyond the scope of Microsoft's search. Like Microsoft, NCMEC and Morse simply looked at the images to confirm that they contained child pornography—nothing more, nothing less. Thus, the district court properly applied the private-search doctrine here.[7]

---

[7] Jeffery raises two additional challenges to the district court's application of the private-search doctrine, both of which we can easily dispose. First, he argues that the Supreme Court recently abrogated the private-search doctrine in *Riley v. California*, 573 U.S. 373 (2014), and *Carpenter v. United States*, 585 U.S. 296 (2018). But the Supreme Court did not analyze the private-search exception in these cases. *Riley* concerned the search-incident-to-arrest exception, while *Carpenter* dealt with the third-party doctrine. And while the third-party and private-search doctrines may rely "on the same precepts concerning the equivalence of private intrusions by private parties," *United States v. Wilson*, 13 F.4th 961, 971 n.9 (9th Cir. 2021), *Carpenter* in no way overruled the private-search doctrine, as our sister circuits have consistently recognized, *see, e.g.*, *United States v. Miller*, 982 F.3d 412, 431 (6th Cir. 2020); *United States v. Ringland*, 966 F.3d 731, 737 (8th Cir. 2020); *Kleiser v. Chavez*, 55 F.4th 782, 783–84 (9th Cir. 2022). Moreover, even if we disagreed with the private-search doctrine's premise, we lack the authority to overrule Supreme Court precedent on the doctrine, as set forth in *Jacobsen*. *See Wilson*, 13 F.4th at 971 n.9. Jeffery's abrogation argument accordingly fails.

Second, Jeffery argues that, notwithstanding the private-search doctrine, the government violated his property interests in the images. But "one cannot have a property right in that which is not subject to legal possession." *Helton v. Hunt*, 330 F.3d 242, 247 (4th Cir. 2003). Because Jeffery had no right to possess child pornography, *United States v. Hicks*, 438 F. App'x 216, 219 (4th Cir. 2011), his property-based argument fails.

Because the district court properly applied the private-search doctrine, it did not err in denying Jeffery's motion to suppress. We decline to reach the merits on whether Jeffery had a reasonable expectation of privacy in the images or whether the good-faith exception applied, as ruling on these questions would not change the outcome here.

## B.

Jeffery also challenges the district court's denial of his motion for a bill of particulars. We review the district court's decision for an abuse of discretion. *See United States v. Schembari*, 484 F.2d 931, 934 (4th Cir. 1973); *United States v. Maurya*, 25 F.4th 829, 837 (11th Cir. 2022). "To show an abuse of discretion, a defendant must establish that he actually was surprised at trial and that the denial of the request for a bill of particulars prejudiced his substantial rights." *Maurya*, 25 F.4th at 837 (internal citation and quotation marks omitted).

A bill of particulars has two primary purposes. First, it aids a defendant in preparing for and avoiding unfair surprise at trial. *See Schembari*, 484 F.2d at 934–35. Second, it enables a defendant to assert double jeopardy if the government ever tries him again for the same offense. *Id.* A bill of particulars is not the only means by which to achieve these goals, however. For example, information shared during the discovery process functions to provide adequate notice to the defendant and prevent unfair surprise. *See id.* at 935 (finding no abuse of discretion where the government voluntarily disclosed its file to the defendant before trial); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) ("Full discovery will obviate the need for a bill of particulars."). Courts also must look at the

12

entire record of a case to determine whether the double jeopardy bar applies. *See United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987).

The information contained in the record and shared with Jeffery during discovery easily achieves these aims. The first superseding indictment—issued more than two years before the start of trial—charged Jeffery with knowingly possessing child pornography on March 17, 2020, in violation of 18 U.S.C. § 2252A(a)(5)(B). While the second superseding indictment charged Jeffery with knowingly accessing a computer device with intent to view child pornography, it charged a violation of the same statutory provision. The second superseding indictment also expanded the charged period to start in October 2019, but still included as an end date the original date of March 17, 2020.

By the time the grand jury returned the second superseding indictment, the government also had already disclosed much of the evidence it intended to present against Jeffery. Notably, the court conducted the evidentiary hearing on Jeffery's suppression motion nearly six months before trial. At that hearing, Morse discussed his receipt of five CyberTips associated with Jeffery's online activity between October 17, 2019, and January 5, 2020. This put Jeffery on notice well in advance of trial that the information contained in those reports largely formed the basis of the allegations against him.

Furthermore, during discovery, the government shared nearly 3,000 Chatropolis URLs that Jeffery accessed on his computer during the charged timeframe, giving Jeffery additional insight into the details of the conduct for which he was charged. Jeffery concedes that he had all the relevant computer data but complains that the government failed to specify "which of the thousands of [his] 'clicks'" formed the basis of the charges.

13

Appellant's Br., at 35. And "[b]ecause the Chatropolis URLs arose from a live chat room," defense counsel could not "recreate the contents of these URLs to try to ascertain which of them potentially constituted the criminal 'accessing.'" *Id.* at 36. Yet, neither could the government. The government sought the second superseding indictment to cover a wider timeframe precisely because Jeffery regularly sanitized his browsing history, thereby destroying any metadata "attributable to 'specific searches' and dates." J.A. 257. And despite Jeffery's purported limitations—which the government likewise faced—Jeffery still accurately predicted the government's theory of the case in his motion for a bill of particulars. Even then, in its brief opposing Jeffery's motion, the government disclosed yet more information about its intent to introduce expert testimony about the laptop's forensics evaluation and to primarily focus on Jeffery's Chatropolis activity at trial. Thus, the government shared more than enough material to inform Jeffery of the essential details needed to prepare his defense and assert double jeopardy in a future prosecution, if needed.[8]

## III.

For the foregoing reasons, the district court's decisions denying Jeffery's motion to suppress and his motion for a bill of particulars are

*AFFIRMED.*

---

[8] Jeffery embeds a Sixth Amendment jury unanimity argument within his double jeopardy argument, asserting that the record fails to establish upon which of the evidence the jury relied in reaching its verdict. But the Sixth Amendment requires a unanimous jury verdict only as to the elements of the offense, not as to the means of committing the offense. *See United States v. Redd*, 85 F.4th 153, 163–64 (4th Cir. 2023). Because the jury reached a unanimous verdict on the elements, Jeffery suffered no Sixth Amendment injury.